# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| ALICE LOUIESE TOLEDANO, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 4:19-CV-00912-ALM-CAN |
| § | |
| COMMISSIONER, SSA, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

## RELEVANT PROCEDURAL BACKGROUND

This case has a lengthy procedural history dating back almost ten years. On October 21, 2011, Alice Louiese Toledano ("Plaintiff") filed an application for Title II disability insurance benefits alleging an onset of disability date of June 1, 1998, [TR 335-36], later amended to January 1, 2005 [TR 76-77]. Plaintiff was born on September 11, 1954, making her fifty (50) years old at the time of her amended alleged onset date. Plaintiff last met the insured status requirements on December 31, 2009 [TR 852]. Thus, the relevant period of review is January 1, 2005, to December 31, 2009. Plaintiff's application was initially denied on December 8, 2011, and again upon reconsideration on January 23, 2012 [TR 161-64, 167-69]. Subsequently, Plaintiff underwent multiple administrative hearings and received three unfavorable ALJ Decisions, the final decision culminating in the instant appeal, as outlined *infra*.

*August 2012 ALJ Decision*

After a hearing on Plaintiff's application on July 12, 2012 ("First Hearing") [TR 73-124], ALJ Edwards issued an unfavorable decision on August 6, 2012 [TR 135-157]. On August 30, 2013, the Appeals Council granted review and vacated the hearing decision [TR158-159]. More specifically, the Appeals Council directed a further hearing to be held and an ALJ to

> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).
>
> If warranted, obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

[TR 158-59].

*June 2014 ALJ Decision*

On May 29, 2014, ALJ Momcilovic convened a second hearing ("Second Hearing") [TR 32-72]. On June 23, 2014, ALJ Momcilovic too issued an unfavorable decision ("June 2014 ALJ Decision") [TR 8-31]. Plaintiff requested review before the Appeals Council, which was denied [TR 1, 125]. Plaintiff appealed the June 2014 ALJ Decision [TR 908]. *Toledano v. Comm'r, SSA*, No. 4:15-cv-00670-ALM-KPJ, ECF No. 1 (E.D. Tex. Sept. 20, 2015). United States Magistrate Judge Kimberly Priest-Johnson recommended affirming the June 2014 ALJ Decision in part and remanding in part [TR 914]. *Toledano*, No. 4:15-cv-00670-ALM-KPJ,

ECF No. 17 at 7.  Relevant to the issues herein, Judge Johnson affirmed the June 2014 ALJ Decision regarding the ALJ's weighing of the medical opinions, *Toledano*, No. 4:15-cv-00670-ALM-KPJ, ECF No. 17 at 9, but determined remand was necessary as the Commissioner failed to satisfy her shifting burden by failing to identify anything other than sedentary work,

> Although the ALJ posed a hypothetical question to the VE about possible jobs Plaintiff could perform and the VE responded with three (3) jobs at the sedentary level, the ALJ failed to pose hypotheticals regarding any other exertion level. This is critical in Plaintiff's case because although the ALJ classified Plaintiff with the ability to perform a full range of work at all exertional levels (*see* Tr. at 19), the VE failed to provide possible jobs at any other exertional level other than the sedentary level. Because of Plaintiff's classification as an "individual of advanced age," the ALJ would be required to apply the grid rules, and thus find Plaintiff disabled, if she was truly limited to only sedentary jobs. In this case, the VE must provide sample occupations Plaintiff could perform at exertional levels besides the sedentary level to support the ALJ's finding that Plaintiff is not disabled.

*Toledano*, No. 4:15-cv-00670-ALM-KPJ, ECF No. 17 at 7.  United States District Judge Amos L. Mazzant, III adopted the Magistrate Judge's findings, and the case was remanded to the Commissioner [TR 920-921].  *Toledano*, No. 4:15-cv-00670-ALM-KPJ, ECF No. 18.

### *June 2018 ALJ Decision*

Upon remand, a third hearing was held on May 30, 2018 ("Third Hearing") [TR 864].  On June 20, 2018, ALJ Finnie issued a further unfavorable decision ("June 2018 ALJ Decision") [TR 847-857].  In the June 2018 ALJ Decision, ALJ Finnie noted,

> Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to develop fully the record with regard to whether any other jobs are available besides those at a sedentary exertional level of activity. Moreover, the undersigned further notes that the District Court in its order affirmed that part of the prior decision as pertaining to the weighing of the medical evidence.
>
> Consequently, the decision issued June 23, 2014, correctly summarized the medical evidence. No useful purpose is served by mere repetition of the matters set out in the prior decision.  Therefore, that medical summary is incorporated by reference as fully and completely as if the same had been set out verbatim herein (Exhibit lOA). The claimant submitted no additional medical evidence since the date of the last hearing (20 CFR 404.935(a)).

[TR 850].

ALJ Finnie then made the following sequential evaluation [TR 847-947].  At step one, ALJ found that the Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2009, and the Plaintiff had not engaged in substantial gainful activity during the period from her amended onset date of January 1, 2005, through her date last insured of December 31, 2009 [TR 852].  At step two, ALJ Finnie found that since the alleged onset date Plaintiff has had the following severe impairments: depression and bipolar disorder [TR 852].  At step three, ALJ Finnie found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 852].  At step four, ALJ Finnie found that "through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, repetitive tasks, with no more than occasionally contact with the public, coworkers, and supervisors" [TR 854].  Continuing the step four analysis, ALJ Finnie determined that Plaintiff is unable to perform any past relevant work [TR 856].  At step five, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, ALJ Finnie found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as kitchen helper/unskilled SVP-2/Medium (DOT Code 318.687-010; cleaner/unskilled SVP-2/Medium (DOT Code 323.687-010); and laundry worker/unskilled SVP-2/Medium (DOT Code 361.685-018).  Based on this determination, ALJ Finnie concluded Plaintiff not disabled at step five of the sequential analysis under § 216(i) and § 223(d) of the Act through December 31, 2009, the last date insured [TR 857].

Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on August 6, 2019, making the decision of ALJ Finnie the final decision of the Commissioner

[TR 837-840]. On December 12, 2019, Plaintiff filed the instant suit [Dkt. 1]. Plaintiff filed his Opening Brief on October 3, 2020 [Dkt. 22], the Commissioner filed its Brief in Support on November 25, 2020 [Dkt. 24].

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff raises the following issues on appeal: (1) whether the ALJ erred in not properly considering all of Plaintiff's severe physical impairments and the effects of those impairments at Step Two; and (2) whether the RFC is based on substantial evidence [Dkt. 22].

*Alleged Step Two Error*

Plaintiff argues that ALJ Finnie committed error at Step Two in failing to consider Plaintiff's severe physical impairments. Plaintiff urges that ALJ Finnie improperly disregarded Plaintiff's physical impairments by incorporating the medical summary from the June 2014 ALJ Decision into the June 2018 ALJ Decision [Dkt. 22 at 6]. Plaintiff contends the ALJ should not have relied upon the June 2014 ALJ Decision because Judge Johnson's affirmance related to the medical opinions of record was limited to Plaintiff's Spanish doctors' medical opinions and the opinion of Dr. Patel [Dkt. 22 at 6-7].

"[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S. § 423(d)(3). "[A]n unsupported medical conclusion as to impairment or disability is not sufficient to establish disability under the Act." *Harrell v. Brown*, 862 F.2d 471, 478 (5th Cir. 1988). "In the absence of clinical findings demonstrating that functional limitations are present, the agency does not possess the discretion to base a finding of disability on the claimant's reported symptoms or alleged limitations." *Thomas v. Comm'r, Soc. Sec.*, No. 4:20-cv-204, 2022 WL 413928, at *3 (N.D. Miss. Feb. 10, 2022) (citing *Randall v. Astrue*, 570 F.3d 651, 657-58 (5th Cir. 2009) ("the Act and the regulations 'separate the question of the impairment's existence from the question of its severity'")). Stated differently, the mere presence of a diagnosed or observable medical condition does not establish the presence of any particular degree of impairment or functional loss unless there are clinical findings showing that work-related functional limitations have resulted from these changes. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) ("a showing of the mere presence of a condition is not sufficient" to establish impairment). Rather, to

establish that a severe impairment is present, a claimant must meet her burden of demonstrating (1) a functional impairment, (2) attributable to a medically determinable impairment, that (3) limits her ability to perform basic work activities. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). There is no burden on the Commissioner to prove the absence of a claimant's alleged impairments. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant); *see also Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (Plaintiff has the burden to present medical evidence that supports her claim of a severe impairment).

Plaintiff's Step Two argument lacks merit. As an initial matter, Plaintiff herself has clearly and unequivocally denied any physical limitations throughout the pendency of her social security proceedings. No physical impairments are listed in her Application [TR 356]. *See Henson v. Barnhart*, 373 F. Supp. 2d 674 (E.D. Tex. 2005) (finding substantial evidence supported the ALJ's decision where Plaintiff did not list depression on her original application for benefits); *see also Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (finding claimant did not meet his burden in proving that he suffered from an impairment where he did not list the alleged impairment in his original application for benefits). In Plaintiff's First Hearing, she disclaimed any physical impairments and declined to have an expert testify as to physical impairments [Dkt. 75 (ALJ: "I have scheduled to testify Dr. Voorhees as to physical impairments[]. Do we have a need for Dr. Voorhees, are there physical--" "ATTY: No, Your Honor.")]. Similarly, during her Second Hearing, which immediately preceded the June 2014 ALJ Decision, she again denied any physical impairments. Consider, the following exchange between Plaintiff and ALJ Momcilovic,

> Q: Okay, that's fine. Now, needless to say, I do understand that you maintain that you are disabled, that you cannot work anymore, and that's due to bipolar disorder, correct?
> A: Yes, sir.
> Q: Okay, and between 2005 and 2009, was there any physical reason for you to claim disability besides mental, bipolar? In other words—
> A: No, sir.
> Q: No physical?
> A: No, sir, never.
> Q: Okay, in other words, Counsel, and that was my understanding. This is nonexertional mental limitations case.
> Atty: Yes, Your Honor.

[TR 48]. Since the filing of Plaintiff's Application over a decade ago she has consistently asserted that she is disabled as a result of depression and bipolar disorder; these are the only two impairments she states in her Application, has offered testimony regarding, or asked the ALJ's to consider [TR 335]. *See Walker v. Astrue*, No. CV 08-4778, 2009 WL 1844350, at *7 (C. D. Cal. June 29, 2009) (finding substantial evidence supported ALJ conclusion that Plaintiff did not suffer from impairment where he "expressly denied" having such impairment during consultative examinations); *see also Tyrpak v. Astrue*, 858 F. Supp. 2d 872, 891 (N.D. Ohio 2012) (affirming ALJ decision where plaintiff initially denied impairment).

Even setting aside Plaintiff's own denial of any physical impairments, ALJ Momcilovic in the June 2014 ALJ Decision did not find any severe physical impairments (including CT spine muscle spasms, myofascial restrictions, decreased ROM, and constant pain at Step Two). In reaching the June 2014 ALJ Decision, ALJ Momcilovic detailed the medical opinions of record, including the opinions of Dr. Johnston, Plaintiff's Spanish doctors (including Drs. Tizon-Garcia, Rendueles-Olmedo and Fores), State Agency Psychologists Dr. John Ferguson and Dr. Leela Reddy, the records of Denton County MHMR (including Dr. Patel's records), and medical expert Dr. Feir. It is undisputed that the bulk of the medical record is directed to Plaintiff's severe mental

impairments.[1] There are scant medical records related to any alleged physical impairments, and the records which do exist predate the alleged onset of disability date. Consider, on January 8, 1999, the Medical Clinic of North Texas noted that Plaintiff had URI, fatigue, pelvic pain, palpitation/heart racing, and uterus/fibroids [TR 711]. A medical note from the same clinic, dated September 10, 2001, listed similar physical issues, along with neck, shoulder, and abdominal pain [TR 447]. A comprehensive list was filled out by Plaintiff that showed additional physical symptoms, including cough, joint pain, heat intolerance, constipation, vaginal discharge, and urinary discomfort [TR 444]. Plaintiff also received surgery on her foot in March of 2003 [TR 438]. Plaintiff was treated by Dr. Mark Anthony Johnston, M.D. ("Dr. Johnston") from August 20, 2001, to February 5, 2004 [TR 427-55]. Plaintiff points to Dr. Johnston's referral of Plaintiff to a physical therapist, who, on September 22, 2003, found that Plaintiff suffered from "CT spine muscle spasms, myofascial restrictions, and decreased ROM, [and] constant pain" [TR 453]. The same physical therapist offered a plan to correct these issues, noting that Plaintiff could "correct the biomechanical dysfunction of the CT spine … and [] abolish the myofascial restrictions in the involved areas" by participating in physical therapy for two to three times a week for six weeks, after which there would be a reevaluation. [TR 455]. ALJ Finnie in reaching the June 2018 ALJ Decision incorporated the consideration by ALJ Momcilovic of all these records. Moreover, contrary to Plaintiff's assertion, Judge Johnson's finding that ALJ Momcilovic properly weighed the medical opinions of record is not limited to Plaintiff's Spanish doctors and the opinions of Dr. Patel; Judge Johnson's opinion discusses additional medical opinions, including Dr. Ferguson, and broadly concludes that the "ALJ correctly weighed the physician's opinions." *Toledano*, No. 4:15-

---

[1] Moreover, in declining to remand ALJ Finnie's 2018 Decision [TR 857], the Administrative Appeals Judge noted that the only additional medical evidence that Plaintiff provided after the case was remanded in federal court "did not provide updated evidence in support of the vague limitations that [Bharat N. Patel, M.D. ("Dr. Patel")] assessed and provided no evidence that the limitations existed between . . . the period at issue" [TR 838].

cv-00670-ALM-KPJ, ECF No. 17 at 12. "At step two, the burden of proof rests upon Plaintiff to show [he had] a medically determinable impairment that qualifie[d] as a severe [impairment]"; Plaintiff has not met this burden. *Estrada v. Comm'r*, SA-18-CV-000002, 2019 WL 453619, at *4 (W.D. Tex. Feb.5, 2019) (citing *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2005)); *Doddy v. Comm'r*, No 2:12cv384, 2014 WL 1268567, at *4 (E.D. Tex. Mar. 27, 2014) ("A claimant must establish, at Step Two of the sequential evaluation process, that she has a medically determinable severe impairment or combination of impairments."). In sum, Plaintiff has disclaimed any severe physical impairments, and, the record itself simply does not show the existence of a severe physical impairment.[2]

***Mental RFC Determination***

In Plaintiff's second point of error, she contends that no medical opinion evidence supports the "mental portion of the RFC." ALJ Finnie found Plaintiff had the mental RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, repetitive tasks, with no more than occasional contact with the public, coworkers, and supervisors" [TR 854]. In formulating this mental RFC, Plaintiff contends ALJ Finnie rejected all medical opinion evidence, including the psychiatric review technique (PRT) of Dr. Ferguson, the medical opinions of Plaintiff's Spanish doctors, and the opinions of Dr. Patel, thus "succumbing to the temptation to play doctor" [Dkt. 22 at 10].

"Residual function capacity is the most an individual can do despite [his] limitations." *Rodriguez v. Colvin*, No. EP-14-CV-00140-RFC, 2016 WL 407330, at *3-4 (W.D. Tex.

---

[2] Even if it could be argued that the ALJ erred at step two in failing to consider Plaintiff's now alleged physical impairments, it is undeniable that the ALJ continued to step five in the sequential evaluation. *See Huong Ai Tran v. Comm'r*, No. 4:19-cv-00395, 2020 WL 5793018, at *4 (E.D. Tex. Sept. 29, 2020) ("Courts in the Fifth Circuit consistently apply a harmless error analysis when the ALJ proceeds past step two in the evaluation process.") (citing *Arteaga v. Berryhill*, No. 4:18-cv-3475, 2020 WL 1154570, at *4 (S.D. Tex. Mar. 10, 2020)); *see also Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (applying harmless error analysis to *Stone* error and noting that cases should not be remanded unless the plaintiff's substantial rights have been affected).

Feb. 1, 2016) (citing 20 C.F.R. § 404.1545). The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). As the Court has already once noted, Judge Johnson's opinion related to the June 2014 ALJ Decision exhaustively addresses that ALJ Momcilovic properly weighed the medical opinions of record. *Toledano*, No. 4:15-cv-00670-ALM-KPJ, ECF No. 17 at 9-12.

More specifically, in the June 2014 ALJ Decision, ALJ Momcilovic provided the following explanation for disregarding the opinions of the Spanish doctors,

> I give little weight to the treating summaries and medical source statements provided by the claimant's Spanish treatment providers, Dr. Rendueles-Olmedo, Dr. Fores, or Dr. Tizon-Garcia, because they are not supported by reference to any treatment progress notes that might contain objective or other clinical evidence from which their conclusions can be drawn.
>
> Medical opinions are given deference where those opinions are shown to be more than conclusory and supported by clinical and laboratory findings. *See Scott v. Heek/er,* 770 F.2d 482,485 (5th Cir. 1985). A treating physician's opinions are far from conclusive and may be assigned little or no weight when good cause is shown. *See Myers v. Apfel,* 238 F.3d 617, 621(5th Cir. 20012; *Loza v. Apfel,* 219 F.3d 378,395 (5th Cir. 2000); *Greenspan v. Shala/a,* 38 F.3d 232,237(5 Cir. 1994). An ALJ may discount the weight of a treating physician's opinion in favor of other experts when the treating physician's evidence is conclusory and unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See Myers,* 238 F.3d at 621; *Newton v. Apfel,* 209 F.3d 448, 456 (5th Cir. 2000); *see also Brown v. Apfel,* 192 F.3d 492, 500 (5th Cir. 1999); and Greenspan, 38 F.3d at 237. In this case, there is no indication that the record is ambiguous, unclear or incomplete, only that the record does not support the treating physicians' conclusions regarding function. These doctors' conclusions are inconsistent with the remainder of the medical record. I have noted the observations and diagnoses of the doctors in this matter, however, the treating source statements calling for essentially a "disabled" conclusion is not supported by these own doctors' medical summaries as noted above. Therefore, I cannot assign significant weight to the opinions of Dr. Rendueles-Olmedo, Dr. Fores, or Dr. Tizon-Garcia.
>
> In weighing the opinion of these doctors, I have taken into account the length of the treating relationship between the claimant and physician, the nature of their treating relationship, the evidence supporting the opinion and whether the opinion is consistent with the medical record and the records of these doctors. I have also taken into account the area of practice for these doctors. I find from the cumulative

> evidence that a contrary conclusion is necessary here. No differential psychological testing was supplied to quantify the severity of the psychological impairments raised by the claimant.

[TR 23-24]. Judge Johnson found the ALJ properly rejected the Spanish doctors:

> In this case, the ALJ properly rejected the opinions issued by the treating physicians Plaintiff visited while she was in Spain. The treating physicians' reports were written in 2011, two (2) years after the date last insured. While a retrospective opinion can prove existence of a disability, it must clearly refer to the relevant period of disability, rather than relate to the claimant's current status. *See Likes v. Callahan*, 112 F.3d 189, 190-91 (5th Cir. 1997); *see also Smith v. Astrue*, 2008 WL 382516 (S.D. Tex. Aug. 15, 2008). Further, Plaintiff's physicians' reports contain statements such as Plaintiff was unable "to hold any kind of regular work" or that her history "confirms a diagnosis of Bipolar Disease," without any supporting medical evidence or clinical techniques used. *See* 20 C.F.R. § 404.1527 ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (a treating physicians' legal conclusions will not support a finding of disabled). Thus, the ALJ properly rejected the treating physicians' reports.
>
> Further, in making his decision, the ALJ took into account all factors, as required, when rejecting these physicians' opinions. *See* Tr. at 22-24. Plaintiff admits that although she sporadically saw her treating physicians, the other five (5) factors, especially her physicians' specialty, should cause the ALJ to give their opinions greater weight. *See* Dkt. 14 at 5. However, not only did Plaintiff infrequently see her treating physicians in Spain, these physicians fail to present medical evidence and laboratory findings to support their opinions and fail to discuss the treatments and kinds of examinations they performed on Plaintiff. *See* Tr. at 22; *see also* 20 C.F.R. § 404.1527(c)(2)(ii), (c)(3). Thus, the ALJ supplied good cause for his decision in rejecting the treating physicians' retrospective opinions while Plaintiff was in Spain.

*Toledano*, No. 4:15-cv-00670-ALM-KPJ, ECF No. 17 at 10.

As it pertains to Dr. Patel, ALJ Momcilovic included the following treatment records in his opinion:

> Also in a visit to Dr. Patel, of MHMR, on August 8, 2011, she had good hygiene. Exit 4F/181. In September and October 2011, she was doing better overall and "clinically improved." Exh. 4F/156-157, 160-161. In addition, in October 2011, she was reportedly "stable on current meds." Exh.4F/152. On October 26, 2011, her mood was "okay." Exh. 4F/146. In November 2011, Dr. Patel observed that she

was "casually dressed, fair hygiene, some psychomotor retardation evident." Exh. 4F/2.

[TR 23]. Judge Johnson opined,

> Plaintiff complains that the ALJ erred in failing to give any reason for not adopting the opinion of Dr. Patel from the MHMR in 2011. *See* Dkt. 10 at 17. However, the ALJ did discuss Dr. Patel's opinions when making his decision; thus, he did not completely ignore his opinions as Plaintiff claims. *See* Tr. at 23. The Court notes the ALJ did not address whether or not he adopted Dr. Patel's opinions; however, this is harmless error. Dr. Patel saw Plaintiff for the first time after the Relevant Period; thus, the ALJ was not required to give Dr. Patel's opinions considerable weight. *See* Tr. at 23; *see also Brown v. Astrue*, 344 F. App'x 16, 20 (5th Cir. 2009) (ALJ did not have to consider physician's opinions from after the relevant time period); *Hillman v. Barnhart*, 170 F. App'x 909, 912-13 (5th Cir. 2006) (ALJ did not err in rejecting physician's opinion when the physician did not begin treating the plaintiff until after the relevant period). Thus, Plaintiff's arguments fail in regards to Dr. Patel.

*Toledano*, No. 4:15-cv-00670-ALM-KPJ, ECF No. 17 at 10-11.

Turning to Dr. Ferguson, Dr. Ferguson opined that insufficient evidence existed to make an assessment regarding Plaintiff's medically determinable impairments for the period August 20, 2001-December 31, 2009 [TR. 681]. More specifically, Dr. Ferguson in completing his Psychiatric Review Technique states,

> There are letters in MEOR from clmt's different psychs seen when clmt was living out the the [sic] country documenting the hx of clmt's tx for Bipolar Disorder. ***Actual progress notes from these psych were unable to be obtained***. MER notes that continued to experience psych sxs despite tx, also reported were non-compliance issues.
>
> ***There is a significant gap in tx from clmt's AOD of 2/4/03 to DLI 12/31/09.***
>
> ***MEOR is insuff prior to DLI 12/31/09***

[TR 669-682 (emphasis added)]. These findings were acknowledged and joined in, on January 18, 2012, by another State Agency Consultant, Leela Reddy, M.D [TR. 683]. Dr. Reddy provided the following rationale:

> *DS agrees with original decision dated 12/5/11-insuff evidence prior to DLI ending 12/31/09*.
>
> Clmt did not provide any new source at recon that were within the time frame and all sources at initial were requested-many overseas.
>
> Insuff evidence prior to DLI ending 12/31/2009.

[TR 683 (emphasis added)]. ALJ Momcilovic in the June 2014 ALJ Decision noted that Dr. Ferguson offered no opinion on Plaintiff's impairments and any limitations it may cause [TR 24]. Judge Johnson's opinion as to Dr. Ferguson finds that ALJ Momcilovic properly gave considerable weight to Dr. Ferguson, who opined that insufficient evidence existed to make an assessment for the Relevant period. *Toledano*, No. 4:15-cv-00670-ALM-KPJ, ECF No. 17 at 11. Thus, as a factual matter, in the June 2014 ALJ Decision, ALJ Momcilovic did not reject Dr. Ferguson's PRT; rather, as Judge Johnson opined the ALJ properly gave considerable weight to Dr. Ferguson's finding that insufficient evidence existed to make an assessment due to the significant gaps in Plaintiff's treatment. ALJ Finnie correctly noted ALJ Momcilovic and Judge Johnson's findings in the June 2018 ALJ Decision:

> Initially, the undersigned notes that in both prior decisions, the Administrative Law Judges pointed out that the record contained little substantive, objective evidence, pertaining to the period prior to the date last insured in December 2009 (Exhibits 3A/15, IOA/13 ). Nevertheless, the undersigned takes notice of the observations cited in Exhibit JOA, that as pointed out by the impartial medical experts at her first hearing, the Exhibits provided by the claimant's treatment providers in Spain (Exhibits 2F, 5-6F, 12-13F) contain no more than summaries of mostly self- reported, subjective symptomatology from the claimant. Specifically, these sources did not provide the results of any mental status examinations or testing they may have performed to support their findings.
>
> Plainly, the description of the serious limiting nature of the multitude of symptoms related to her mental impairments is belied by the minimal health care documented in the record for the period under consideration.

> As for the opinion evidence, the undersigned adopts the findings in the prior decision concerning the opinions of the claimant's Spanish mental health care providers, set out in Exhibits 2F, *SF,* and 12-13F.
>
> In addition, the State agency consultant, in Exhibit 7F, created a report called a Psychiatric Review Technique, in which he opined that insufficient evidence existed to make an assessment for the period August 20, 2001-December 31, 2009. These findings were affirmed on January 18, 2012, by another State agency consultant in Exhibit 8F. Based upon the fully developed record, as available for the period under consideration, the undersigned assigns less weight to these assessments.

[TR 853-855].

To the extent Plaintiff asserts that because of these findings the RFC in the June 2018 ALJ Decision is devoid of supporting medical opinion evidence, the Court disagrees. No requirement exists that the ALJ rely on any single medical opinion in its entirety. And the Fifth Circuit has never, required that an "RFC precisely match an expert medical opinion." *Dixon v. Comm'r*, No. 4:18-CV-634, 2019 WL 5875901, at *1 (E.D. Tex. Sept. 27, 2019); *D.J.M. v. Berryhill*, No. 18-cv-0193, 2019 WL 1601491, at *4 (W.D. La. 2019) ("Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source."). Moreover, in cases where no medical statement has been provided the Court's inquiry must focus on whether the decision of the ALJ is supported by substantial evidence. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1997) ("In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."); *Kalka v. Kijakazi*, No. 6:21-CV-00087, 2022 WL 866409, at *1 (E.D. Tex. Mar. 23, 2022). Here, it is.

ALJ Finnie clearly considered, gave deference to, and incorporated into the RFC, Plaintiff's subjective complaints regarding the severity of her mental impairment. While the "special technique" is not an RFC assessment, ALJ Finnie in the June 2018 ALJ Decision states,

> For the period under consideration, in understanding, remembering, or applying information, the claimant has moderate limitations. The claimant alleged that she has difficulty remembering generally, understanding what is said to her, following instructions, completing tasks, paying bills, going to doctor's appointments without reminders, and taking medications without reminders. However, the claimant also stated that she could prepare meals, shop, drive, and read. In addition, the record shows that the claimant was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers.
>
> In interacting with others, the claimant has moderate limitations. Here, the claimant alleged that she has difficulty engaging in social activities and getting along with others. However, according to her statements, the claimant is also able to shop, spend time with friends and family, and live with others.
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that she has limitations in concentrating generally, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule. On the other hand, the claimant said that she is also able to drive, prepare meals, watch TV, read, and handle her own medical care.
>
> Finally, the claimant has mild limitations in her ability to adapt or manage herself The claimant asserted that she has difficulties dressing and bathing. That said, the claimant also stated that she is able to get along with caregivers. Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.
>
> ….
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental functional analysis.
>
> ….

In addition to the medical opinions outlined earlier, ALJ Finnie's opinion incorporates the remainder of Plaintiff's medical record. Such as, on September 10, 2001, Mark Anthony Johnston, M.D., noted in Plaintiff's medical history, that she had complaints of intermittent/situational anxiety/depression, for at least 2 1/2 to 3 years, related to her mother dying, her husband having to spend a great deal of time in Spain, and work-related stress [TR 445, 447]. However, Plaintiff strongly urged that she preferred not take psychotropic medication for this condition [TR 445, 447]. *See Villa*, 895 F.2d at 1024 (a claimant's failure to seek treatment for a condition indicates the claimant did not regard the condition as causing significant or disabling functional limitations). On February 4, 2003, Dr. Johnston recommended counseling for depression/anxiety for Plaintiff [TR 435]. In an examination of Plaintiff on February 12, 2003, a provider noted that Plaintiff's psychological status was within normal limits [TR 433]. In May 2003, Plaintiff presented to physician's assistant Alicia Ross with "recurrent depression" with symptoms including decreased sleep, lack of concentration/energy/enjoyment, partially because of a stressful job [TR 432]. She was observed crying and with a flat affect during this visit [TR 432]. But in a follow-up examination on June 10, 2003, Plaintiff reported an improved mood, more energy, was "somewhat motivated" with weight loss [TR 431]. Plaintiff complained of confusion forgetfulness, and difficulty concentrating [TR 431]. Denton County MHMR records in June 2008 indicated a diagnosis of major depression and bipolar disorder, but, in an August 2, 2011, evaluation, Lynn David, MSSW, noted that Plaintiff stated that she knows once she is back on medication, her mood will lift and she will feel better [TR. 558]. Plaintiff reported during the examination that she was diagnosed with bipolar disorder in 2008 and discovered she responds well to medication [TR 558]. Medical reports from Denton Regional Medical Center support the ALJ's mental RFC. On October 8, 2011, Plaintiff presented with complaints of forgetfulness, emotionality, racing heart, dizziness,

and unusual behavior [TR 476-477]. However, in mental status examinations on August 23, September 6 and 21, and October 12, 2011, Plaintiff's motor activity was normal, affect normal, mood elevated, speech normal, and thought process intact without hallucinations or delusions, properly oriented without suicidal/homicidal ideations [TR 630, 639, 643, 645]. On January 30, 2012, a mental status examination at Denton County MHMR, was within normal limits, except that her mood was depressed [TR 688]. The ALJ's opinion thus recognizes that Plaintiff suffered from certain mental conditions that warranted limitations. These limitations, found at earlier steps, were later incorporated into the RFC after a thorough evaluation of the evidence in this case with the finding that "she is limited to simple, repetitive tasks, with no more than occasionally contact with the public, coworkers, and supervisors" [TR 854].

In summary, the June 2018 ALJ Decision shows careful consideration of the medical records and testimony. The record contains evidence which supports the RFC found by ALJ Finnie. *See Gina R. v. Comm'r*, No. 3:19-CV-2038-BK, 2021 WL 1209198, at *3-4 (N.D. Tex. Mar. 30, 2021) (finding substantial evidence for the ALJ's RFC assessment where the full medical record did not support the limitations put forth by the consultative examiner); *see also Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (finding substantial evidence supporting the non-severity findings of plaintiff's mental problems where the medical record did not show "any reason why mental problems would prevent him from engaging in gainful activity.").

## CONCLUSION AND RECOMMENDATION

Pursuant to the foregoing, it is recommended that the decision of the Administrative Law Judge be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate

judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 15th day of November, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE